# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **WILLIAM THOMPSON,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:04CV00043 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **JO ANNE B. BARNHART,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

In this social security case, I affirm the final decision of the Commissioner.

*I. Background.*

William Charles Thompson filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claims for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2005) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g).

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner

must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Thompson applied for benefits on November 5, 2002, alleging disability since September 28, 1986, and received a hearing before an administrative law judge ("ALJ") on March 7, 2003. By decision dated April 9, 2003, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

## *II. Facts.*

Thompson was forty-five years old at the time of the ALJ hearing. (R. at 18.) He has a limited education and past work experience as a grocery store worker and bagger. (*Id.*) Thompson alleges disability since the age of twenty-eight due to arthritis, fibromyalgia, musculoskeletal impairments, anxiety, depression, and I.Q. problems. (*Id.*)

Based upon the evidence, the ALJ determined that the plaintiff has the residual functional capacity to make a successful adjustment to work that exists in significant numbers in the national economy. Based upon the testimony of a vocational expert and application of the medical-vocational guidelines, the ALJ found that the plaintiff is not disabled.

*III. Analysis.*

The plaintiff contends that the ALJ's opinion is not supported by substantial evidence. Specifically, he argues that the ALJ erred when he (1) determined that the plaintiff's date last insured was December 31, 1986; (2) determined that the plaintiff is not disabled, despite his acknowledgment that the plaintiff has a severe impairment; and (3) failed to address the opinion of the plaintiff's treating physician. In addition, the plaintiff argues that the Appeals Council erred when it failed to consider new and material evidence submitted on behalf of the plaintiff, and requests a "sentence six" remand.

*A.*

First, the plaintiff argues that the ALJ's determination that Thompson's date last insured ("DLI") was December 31, 1986, was incorrect. "DLI is the last day in the last quarter when disability insured status is met." Social Security

Administration, Program Operations Manual Sytem ("POMS") § RS 00301.148. To determine when a claimant last met disability insured status, the "20/40 requirement" is used. 20 C.F.R. § 404.130(b) (2005). Under that test, a claimant must have earned twenty quarters of coverage in the last forty quarters preceding his or her alleged disability. *Id*. To obtain coverage in any quarter, a claimant must meet the earnings figure set by the Commissioner and published in the Federal Register each year. *See* 42 U.S.C.A. § 413(d)(2) (West 2003).[1]

In this case, the ALJ determined December 31, 1986, to be Thompson's DLI. The ALJ did not discuss this finding because the parties did not contest the issue at the time of the hearing.[2] However, the DLI calculation can be recreated.

Applying the 20/40 requirement, I find that the ALJ's calculation was correct. A review of Thompson's earning records shows that he had no earnings in the years

---

[1] The Commissioner began publishing those figures after 1978. *See Id.* § 413(d)(2). Prior to 1978, an individual must have earned wages of at least $50 per quarter. 42 U.S.C.A. § 413(d)(1) (West 2003). In the year 1978, that amount rose to $250 per quarter. *Id.* § 413(a)(2)(A)(1).

[2] At the hearing before the ALJ, the claimant's attorney conceded the insured date:

> ALJ: So, and, and I have his date last insured as December 31, 1986, is that right?
>
> ATTY: That's great, um-hum.

(R. at 391.)

- 4 -

1983 through 1988, or 1993 through 2003. (R. at 65.) Accordingly, he did not qualify for coverage during any quarter of those years. In addition, Thompson's 1989 earnings were too low to qualify for coverage.[3] Counting back from the date Thompson filed his claim, the fourth quarter of 1986 is the last quarter in which Thompson had been insured for twenty of the previous forty quarters.

Thompson argues that he should have received an additional eleven quarters credit because he returned to work from 1989 to 1992. According to his calculations, this credit would extend his DLI to September 30, 1989. The plaintiff does not cite, nor can the court identify, any authority to support the argument that the plaintiff should receive credit for the period in question. Applying the 20/40 requirement, Thompson earned only nine quarters of credit in the forty quarters ending September 30, 1989, eleven quarters shy of the twenty required.

Even if Thomspon's DLI were calculated using an alternate available computation, his DLI still would not extend as late as September 1989. A special computation applies to claimants who allege the onset of disability prior to the age of thirty-one. 20 C.F.R. § 404.130(c). That computation requires claimants to prove that they had coverage for at least half of the quarters between the quarter after the

---

[3] Thompson earned $436.63 in 1989. (R. at 65.) The Commissioner set the 1989 earnings requirement at $2,000 per year or $500 per quarter. POMS § RS 00301.250.

- 5 -

quarter they turned twenty-one, and the quarter in which they became disabled. *Id.* The 20/40 requirement is also used for claimants eligible for special insured status, but those claimants are given the benefit of the later of the two DLIs. POMS § RS 00301.148B.2.c.

The special insured status computation examines the quarters in between the one following Thompson's twenty-first birthday—the first quarter of 1979—and the quarter in which the disability is alleged to have begun. In the third quarter of 1989, the DLI claimed by Thompson, he had been insured during only twelve of the thirty-nine quarters since his twenty-first birthday. Thus, September 1989, is seven quarters shy of the special insured status requirement. The last date on which Thompson appears to have met the special insured status test is December 31, 1984. *See Koffsky v. Apfel*, 26 F. Supp. 2d 475, 477 (E.D.N.Y. 1998) (performing similar calculation). On that date, Thompson had been insured for twelve out of the twenty-four quarters that had elapsed since his twenty-first birthday. The DLI used by the ALJ, therefore, was not only correct under the 20/40 requirement, it also extended the plaintiff's DLI further than the special insured status computation would have. Accordingly, I find the ALJ's calculation of the plaintiff's DLI is supported by substantial evidence.

*B.*

Next, the plaintiff argues that the ALJ improperly determined that he is not disabled, despite the finding that the plaintiff suffers from a severe impairment.

A finding that a claimant suffers from a severe impairment does not require a corresponding finding that the claimant is disabled. A claimant with a severe impairment still may be able to return to her past relevant work or perform other work in the national economy. *See* 20 C.F.R. § 416.920 (2005) (five-step sequential evaluation process); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, the ALJ found that Thompson has a "severe" inability to read. (R. at 20, 22.) Following the five-step sequential evaluation process, the ALJ then determined that (1) Thompson's impairment does not meet or medically equal any listed impairment; (2) Thompson has no past relevant work experience; and (3) Thompson "is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (R. at 20-22.) These determinations are supported by substantial evidence.

Thompson argues that his I.Q. test results demonstrate his inability to work. The ALJ rejected the results of several I.Q. tests administered to Thompson while he was in school. Dr. Thomas Schacht, a state agency medical expert, credibly testified that the results of those tests had been skewed by Thompson's reading problems. (R.

at 20.)  The ALJ further noted several inconsistencies in the testing records.  (*Id*.)
Finally, the ALJ accepted Dr. Schacht's testimony that Thompson's learning
disability primarily affected his ability to read, and that Thompson could still perform
work at any exertional level. (*Id*.)

Thompson argues that the ALJ also should have considered the results of I.Q.
testing conducted by Dr. Michael Kleinot in 1997.  Despite the fact that that test was
administered more than ten years after Thompson's DLI, the ALJ did consider its
results.  (*Id*.)  Dr. Kleinot's opinion—that Thompson has borderline intellectual
functioning—was consistent with Dr. Schacht's opinion. (Pl.'s Mot. Summ. J. at 12
(summarizing Dr. Kleinot's findings).)

Thompson also argues that the ALJ's opinion failed to consider his numerous
other severe impairments.  The majority of evidence Thompson cites does not relate
to the time period prior to his DLI.  As the ALJ explained, "[o]ther impairments
documented in the record may be 'severe,' but they are 'severe' considerably after
December 31, 1986." (R. at 20.)  Thompson does point to three sets of records that
partially overlap with the time period in question.  Thompson was a patient of Royal
Oak Medical Associates from the time of his birth through his DLI, a patient at Smyth
County Community Hospital on several occasions between January 1979 and his DLI,
and a patient of Dr. Sossamon beginning two months prior to his DLI.  (Pl.'s Mot.

Summ. J. at 12.) The Royal Oak Medical Associates records are the subject of an additional argument by the plaintiff and are discussed at length later in this Opinion. The ALJ specifically addressed the emergency room records, concluding that they failed to produce any objective evidence of a severe exertional impairment. (R. at 19.) Dr. Sossamon's records indicate that Thompson suffered a low back sprain/strain on October 2, 1986. (R. at 245.) He noted that Thompson had not suffered any similar condition prior to that date. There is no evidence that Thompson continued treatment for this condition. The next report in the record from Dr. Sossamon is dated June 1991, and relates to a different accident. (R. at 252.)

Finally, Thompson argues that the testimony of state medical expert Dr. Theron Blickenstaff supports a finding that he had severe exertional impairments as of his DLI. The ALJ did consider Dr. Blickenstaff's testimony, but he afforded it little weight because it did not specifically deal with the period of time on or before Thompson's DLI. (R. at 19.)

The ALJ's opinion clearly shows that he followed the sequential evaluation process and that he fulfilled his duty to evaluate all the medical evidence and determine what weight to accord such evidence. *See* 20 C.F.R. §§ 404.1527, 416.927, 416.920 (2005). Accordingly, I find the ALJ's determination that Thompson's severe impairment does not render him disabled to be supported by substantial evidence.

*C.*

The plaintiff also argues that the ALJ erred when he failed to address the opinion of the plaintiff's treating physician, Dr. Clampitt. Dr. Clampitt and his associates at Royal Oak Medical Associates are Thompson's family physicians.

The ALJ must generally give more weight to the opinion of a treating physician because that physician often is best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, circuit precedent does not require that a treating physician's testimony "be given controlling weight." *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992). While the regulations provide that a treating source's opinion on the nature and severity of impairments will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Similarly, a treating physician's retrospective opinion concerning the extent of past impairment may be rejected only in the presence of persuasive contradictory evidence. *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

Dr. Clampitt offered several retrospective opinions about Thompson's health prior to December 1986. On May 27, 1998, he opined that Thompson "had suffered from chronic complaints of back trouble since before November, 1986." (Pl.'s Mot. Summ. J. at 13.) On January 6, 1999, he opined that Thompson "suffers from degenerative disc disease of his back and reactive airway disease which has been an ongoing problem for some time, dating back to military service in the reserves." (*Id*. at 12-13.)

Dr. Clampitt did not begin treating Thompson until 1993, seven years after his DLI. ( R. at 284.) Although Dr. Clampitt had access to Thompson's records relating to the time period in question, his conclusions about that time are based primarily on the plaintiff's Royal Oak Medical Associates medical records. There are no contemporaneous treatment records from Dr. Clampitt to corroborate his opinion. Dr. Clampitt's letters do not contain any objective clinical findings to substantiate Thompson's complaints and do not discuss what, if any, limitations Thompson had during the time period in question.

Most importantly, Dr. Clampitt did not provide any evidence that Thompson's medical conditions were of a disabling severity prior to his DLI. The ALJ reached his conclusions based on evidence contrary to Dr. Clampitt's opinions, including testimony from the state agency medical experts, who formed their opinions based

upon a review of all of Thompson's records, not just those from Royal Oak Medical Associates. Resolving conflicting testimony is the Secretary's responsibility, not the task of a reviewing court. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In this instance, it was within the ALJ's discretion to reject Dr. Clampitt's opinion.

*D.*

Finally, the plaintiff argues that the Appeals Council erred when it failed to consider new and material evidence submitted on behalf of the plaintiff, and requests a "sentence six" remand.

Under Fourth Circuit precedent, I do not review the Appeals Council's decision to grant or deny review. *Wilkins*, 953 F.2d at 96 (explaining that when the Appeals Council denies review, the decision of the ALJ becomes the final decision reviewable by this court); *accord Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 816-17 (7th Cir. 1993) (describing the rationale behind the rule that the district court does not review the Appeals Council's decision). However, if the Appeals Council fails to consider a claimant's additional evidence, then a "sentence six" remand may be appropriate. *See* 20 C.F.R. § 404.970(b) (1999) (stating that the Appeals Council must "consider the additional evidence" and "evaluate the entire record"). In this case, the Appeals Council considered Thompson's additional evidence and evaluated

it in light of the entire record, as required by the Act. (R. at 6-7, 10.) Accordingly, I find that a remand is not warranted.

### IV. *Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: September 25, 2005

/s/ JAMES P. JONES
Chief United States District Judge

- 13 -

Case 2:04-cv-00043-JPJ-PMS   Document 24   Filed 09/25/05   Page 13 of 13   Pageid#: 98